In re DIPLOMAT CONSTRUCTION, INC., Debtor.

No. 09–68613–MGD.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 5, 2011.

J. Robert Williamson, Laura E. Woodson, Scroggins and Williamson, James R. Sacca, John D. Elrod, Greenberg Traurig, LLP, James R. Schwartz, Merritt Watson, LLP, Atlanta, GA, Joseph H. Turner, Norcross, GA, for Debtor.

## ORDER GRANTING TRUSTEE'S MOTION FOR AUTHORIZATION TO SETTLE AND COMPROMISE CLAIMS AGAINST STATE BANK OF TEXAS

MARY GRACE DIEHL, Bankruptcy Judge.

On April 22, 2011, an evidentiary hearing was held on Trustee's Motion for Authorization to Settle and Compromise Claims Against State Bank of Texas ("Motion") filed by Paul H. Anderson, Chapter 7 Trustee ("Trustee"). (Docket No. 223). Trustee seeks to settle the remaining claims in the adversary proceeding action against State Bank of Texas ("SBT"), adversary proceeding number 10–6597–mgd. The action was originally filed in the District Court for the Northern District of Georgia on May 27, 2009. (Civil Action No. 1:09–CV–1419–RLV). On October 5, 2010, the District Court referred this action to this Court. (Docket No. 44). At the time the case was transferred, and following the Order partially granting SBT's motion to dismiss, two claims remained: fraud and misappropriation of trade secrets under Georgia law. (Docket No. 24).

Trustee seeks to settle the pending adversary action against SBT and release the claims against SBT in exchange for $40,000.00 paid by SBT into the estate ("Settlement Agreement"). Trustee's Motion first came on for hearing on April 7, 2011. At the April 7, 2011 hearing, Frank B. Wilensky appeared on behalf of R.C. Patel, former Chief Executive Officer of Debtor, and Mukesh Patel and opposed the Motion. Mr. Wilensky made an oral offer, which was later memorialized in writing and admitted into evidence, to counter the Trustee's proposed settlement. (Trustee's Exhibit 14; Objectors' Exhibit 1). R.C. Patel offered to fund the prosecution of the adversary action against SBT and place $40,000.00 into the Bloom Law Firm LLP's ("Bloom Firm") trust account for the benefit of the estate if Trustee did not prevail for more than $40,000.00 in the action. The Bloom Firm would prosecute the adversary action and R.C. Patel and Mukesh Patel would pay for litigation costs and expenses incurred by the Bloom Firm. In the event of a recovery of more than $40,000.000, the Bloom Firm's fees and expenses would be deducted from the recovery of any amount in excess of $40,000.00. SBT filed a Memorandum in Support of Trustee's Motion. (Docket No. 245).

At the evidentiary hearing, James R. Schwartz of Merritt Watson, LLP, appeared as counsel for Trustee, and Mr. Wilensky, appeared as counsel for R.C. and Mukesh Patel (collectively, "Objectors" or "Patels"). The Court heard evidence. Trustee's exhibits 1 through 15 were admitted into evidence without objection. Objectors' exhibits 1 and 3 were

admitted without objection, and pages 68 through line 22 on page 74 of Objectors' exhibit 2 were admitted after sustaining Trustee's objection to the remainder of the deposition transcript. Paul H. Anderson, Chapter 7 Trustee, and William J. Holley II, lead counsel for SBT in related litigation, were called as Trustee's witnesses. Objectors called R.C. Patel and Michael James Johnson, counsel at Bloom Firm. At the close of the evidentiary hearing, the Court granted Trustee's Motion and gave its findings of fact and conclusions of law on the record. This Order memorializes the Court's ruling.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and this is a core matter under 28 U.S.C. § 157(b)(2). Venue is proper.

■ This Motion is governed by Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, which provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR.P. 9019(a). "A chapter 7 trustee is required to reach an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays and expense of prolonged litigation in an uncertain cause." *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 212 F.3d 632, 635 (1st Cir.2000) (quoting *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1145 (1st Cir. 1992)).

■ In the Eleventh Circuit, the Court evaluates a proposed settlement by considering the following factors:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors

and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir.1990). "Courts consider these factors to determine 'the fairness, reasonableness and adequacy of a proposed settlement agreement.' " *Chira v. Saal (In re Chira)*, 567 F.3d 1307, 1312–1313 (11th Cir.2009) (quoting *Martin v. Kane (In re A & C Prop.)*, 784 F.2d 1377, 1381 (9th Cir.1986)).

■ The Supreme Court has explained the court's role in considering a trustee's proposed settlement or compromise as follows:

There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). The court must be informed of all the relevant facts and information in order to make an independent judgment as to whether the settlement is fair and reasonable under the circumstances. *In re Vazquez*, 325 B.R. 30, 36 (Bankr.S.D.Fla. 2005). "The court is neither to 'rubber stamp' the trustee's proposals nor to substitute its judgment for the trustee's, but rather to 'canvass the issues' and determine whether the settlement falls 'below the lowest point in the range of reason-

ableness.'" *Id.* (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.1983)).

For the reasons set forth below, the proposed settlement by Trustee is reasonable and the Motion is granted.

The proposed settlement of the remaining claims arise out of an FDIC auction in which the lead participant's portion of Debtor's promissory note was auctioned. These are the alleged facts. The FDIC assumed the lead participant's note when it became such bank's Receiver on August 29, 2008. R.C. Patel, acting in his capacity as Chief Executive Officer of Debtor, contacted SBT's Chief Executive Officer, seeking financing to place a bid, or to cause a bid to be placed, in the amount of $2,400,000. Debtor and its former principals assert that it had an existing contractual relationship with SBT. SBT declined to provide financing for Debtor, and SBT placed the winning bid at such auction in the amount of $2,420,000. These alleged facts and the information SBT had to place the winning bid are the subject of the remaining claims in the adversary proceeding at issue, a separate District Court suit, *State Bank of Texas v. Patel*, No. 1:09–cv–1494–RLV ("Guarantee Suit") by way of a counterclaim, and the appeal of *State Bank of Texas v. Diplomat Construction, Inc.*, No. 2010–cv–185312 ("Confirmation Proceeding"), originally filed in the Superior Court of Fulton County.

## A.   Probability of Success on the Merits

■   Trustee's probability of success on the merits is minimal. Mr. Anderson, who has served as a Chapter 7 Trustee for 34 years, testified that after review of the pleadings in this action, he determined that accepting the SBT settlement offer was in the best interest of the estate. Mr. Anderson's testimony revealed that his decision to accept the settlement offer was based on the perceived merits of the remaining claims, the relevant rulings made

in this action and the Guarantee Suit, and the substantial attorney time related to this action when it was before the District Court. In response to questioning on cross-examination, Mr. Anderson succinctly stated that his acceptance of the settlement was based on "no money and no merit."

■   A Chapter 7 Trustee's role is to marshal an estate's assets and liabilities. *See* 11 U.S.C. § 323. Based on information and assessment of the facts and circumstances in the case, the trustee is charged with settling claims or accounts, using his informed discretion, to maximize return for the creditors. *E.g., In re Mailman Steam Carpet Cleaning Corp.*, 212 F.3d 632, 635 (1st Cir.2000). "[With] potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously—and an inquiring court must accord him wide latitude should he conclude that the game is not worth the candle." *Id.* (quoting *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 50 n. 5 (1st Cir.1998)) (quoting 9 COLLIER ON BANKRUPTCY P 9019.01, at 9019–2 (15th ed. 1995)).

Mr. Holley, lead counsel for SBT in this action, the Guarantee Suit, and the Confirmation Proceeding, provided testimony regarding the status of the other litigation, the basis for SBT's offer to Trustee, and his assessment of the remaining claims in this case. Mr. Holley testified as to Trustee's Exhibit 1, the District Court's Order granting Plaintiff's motion for summary judgment and denying Defendant's motion for judgment on the pleadings, which included disposition of Defendants' asserted counterclaim of tortious interference with business relations, in the Guarantee Suit ("Summary Judgment Order"). Mr. Holley explained that the Summary Judgment Order resulted in a judgment against R.C. Patel and Mukesh Patel in the amount of

$6,996,103.01. The District Court's reasoning for denying judgment on the pleadings for the counterclaim was threefold: (1) damages were speculative; (2) SBT's attempt to collect on guarantees by filing a suit cannot form the basis of a tortious interference with business relations claim; and (3) SBT exercising its legal rights against guarantors cannot form the basis tortious interference with business relations claim, in part, because the Patels did not establish that SBT was a "stranger" to the business or contractual relationship at issue.[1]

Mr. Holley also testified that SBT made the $40,000.00 offer to Trustee based on the estimated costs of filing a summary judgment motion in this action. He referred to the offer as a "nuisance cost." He testified that SBT's motivation to settle the action was not based on its estimation of the merits of the case, but, instead, of SBT's ability to quickly resolve the matter. Mr. Holley also explained that the $40,000.00 offer was made in advance of the Summary Judgment Order being entered in the Guarantee Suit. In light of the Summary Judgment Order, Mr. Holley stated that the offer was probably "too rich."

Mr. Holley also testified that he took R.C. Patel's deposition and that R.C. Patel is in the best position to testify regarding the facts surrounding SBT's acquisition of the lead participant's portion of Debtor's note. Mr. Holley testified that the evidence in this action and related actions contradicts R.C. Patel's deposition testimony. The factual basis for the remaining claims in this action and the factual basis supporting the other actions with SBT are identical.

Mr. Holley further testified that the remaining claims in this action, fraud and misappropriation of trade secret, have an identity of issues with claims in the Guarantee Suit and Confirmation Proceeding. Mr. Holley explained that success by Trustee would require a legal finding that under Georgia law a confidential relationship exists between a bank and a customer, assuming that a loan seeker qualifies as a customer. Mr. Holley noted that the Summary Judgment Order found no such confidential relationship exists. (Trustee's Exhibit 1, pages 18 & 19).

Mr. Johnson, counsel for Patels and Objectors' proposed counsel for this action, testified that he perceived the settlement to greatly undervalue the claims, and that he "definitely" thought Trustee could prevail against SBT on a summary judgment motion. Mr. Johnson also provided an assessment of damages that relate to the remaining claims and Debtor's ability to quantify such damages. Mr. Johnson described Debtor's damages as the difference in the value of the note, approximately $11 million dollars and $2,400,000 (what Debtor could have paid for the note), attorneys' fees as a result of SBT's action, and unspecified damages based on the damage to Debtor's banking relationships.

Based on the testimony and review of the exhibits admitted into evidence, which include the Summary Judgment Order in the Guarantee Suit and the District Court's Order partially granting SBT's Motion to Dismiss in this action prior to case's referral to this Court (Trustee's Exhibit 1 & 3), Trustee's evaluation of the probability of success on the merits is reasonable. The Court is not deciding the merits of those claims when assessing whether to approve Trustee's Motion and proposed settlement with SBT. The Court's assessment is limited to the probability of succeeding on those claims. *In re*

---

1. *See Barnwell v. Barnett & Co.*, 222 Ga.App. 694, 476 S.E.2d 1 (1996) (explaining elements of a tortious interference with business relations claim under Georgia law).

*Justice Oaks II, Ltd.,* 898 F.2d at 1549. Here, the results of the prior litigation and the substantial identity of the claims coupled with the factual inconsistencies and credibility issues with R.C. Patel, Debtor's principal witness, lead the Court to believe the probability of success on the merits is low and that Trustee's evaluation of the claims was reasonable in method and final determination. Mr. Johnson's testimony offered an alternative perspective but did not sufficiently contradict the issues identified by the Court as evidence to support a determination that the probability of success on the merits is minimal.

## B. Collection Difficulties

Neither party presented any evidence that any judgment would be difficult to collect from SBT, and any potential difficulty would support granting the Motion.

## C. Complexity, Expense, Inconvenience, and Delay

■ The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending is a real concern for the Court. The parties agree, and the testimony supports, that the remaining claims and the posture of the litigation are not complex in a conventional sense; however, the Objectors' proposal introduces complexity and potential delay. Objectors present their offer to fund and prosecute the litigation, while guaranteeing, at a minimum, an equal or greater recovery, to support their assertion that the complexity and expenses of the litigation weighs in their favor. The Court disagrees.

Joint control of the litigation by R.C. and Mukesh Patel and Trustee necessarily complicates the litigation. Although the Objectors assert that Trustee maintains settlement authority and that Trustee can bring another motion to settle and compromise at any time, requiring approval by the Court, the Court views Objectors' proposed litigation strategy as complex and resulting in delay. Primarily, the myriad of choices and decisions that accompany any litigation have the potential to become complicated with a joint-controlled prosecution. For example, which witnesses to call or which motions will be filed are decisions where reasonable parties can disagree and have disparate litigation strategies. While Objectors' proposal funds the Bloom Firm's litigation costs, inevitably, Chapter 7 administrative expenses will result from continuing the action and participating in the prosecution and the prosecution strategy. The complexity of this arrangement also gives rise to the potential for a larger delay.

Apart from the complexity of the Objectors' proposal, delay, in and of itself, also weighs in favor of approving Trustee's proposed settlement. Testimony offered by Mr. Johnson estimated that if SBT filed a motion for summary judgment, a response would likely require two weeks, and any trial would likely require two to three days. This is a significant delay when compared to the Trustee's proposed settlement of $40,000.00, payable within 10 days of the Effective Date, as defined by the terms of the Settlement Agreement. Additionally, the related litigation with these parties, the Guarantee Suit and Confirmation Proceeding, demonstrate that there is a strong likelihood that any result of this litigation not in favor of Debtor would be appealed as a matter of course, contributing further to the relative delay. For these reasons, this factor also weighs in favor of Trustee.

## D. Interests of Creditors

■ The proposed settlement benefits creditors with nearly immediate and certain sums paid to the estate. Based on Trustee's description of the status of the case, the claims in this case include both Chapter 7 and Chapter 11 administrative

expenses in addition to pre-petition creditor claims. Mr. Anderson represented that it was unlikely for any recovery to extend beyond the collective administrative claimants. SBT is the largest creditor in this case, and it supports the Motion. Interests of the estate and creditors are aligned. Objectors are not creditors of the estate. Instead, R.C. Patel and Mukesh Patel represent former principals of Debtor. Trustee's assessment that the settlement is in the best interest of creditors is sound.

Objectors present their proposal as a "no-risk" offer to the estate with a fully-funded potential upside. However, Objectors' proposal does not outbid the proposed settlement to ensure that creditors will receive more. Instead, the offer only matches SBT's payment under the Settlement Agreement. Moreover, the structure of Objectors' proposal, with Bloom Firm litigation expenses coming off the top of any recovery in excess of $40,000.00, also leads the Court to determine that the probability of the estate recovering more than $40,000.00 is low. Mr. Johnson's testimony provided projections of time needed to respond to a potential motion for summary judgment filed by SBT and potential trial, which will result in significant litigation costs. Creditors would benefit more from Objectors' proposal only if Trustee recovers, and such recovery exceeds $40,000.00 plus all litigation expenses incurred by Bloom Firm. Based on the evidence, it is unlikely that any recovery on the merits or later settlement would result in more than $40,000.00 when the incurred expenses of Bloom Firm are factored into the equation.

The Settlement Agreement presented to the Court by Trustee is reasonable. The minimal likelihood of success on the merits and the resulting complexity from Objectors' proposal to fund and control the ongoing litigation of this action do not provide any basis for the Court to deny Trustee's Motion. Trustee's determination that the $40,000.00 settlement with SBT is in the best interest of the estate is justified. Accordingly, it is hereby

**ORDERED** that Trustee's Motion for Authorization to Settle and Compromise Claims Against State Bank of Texas is **GRANTED.** The Trustee is authorized to enter into the Settlement Agreement as attached to Trustee's Motion and admitted into evidence as Trustee's Exhibit 14.